# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 18, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1554**

**STATE OF WISCONSIN**

Cir. Ct. No. 2013FA2300

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE MARRIAGE OF:

SHALAAN K. FISHER,

PETITIONER-APPELLANT-CROSS-RESPONDENT,

V.

ABDULLATTIEF A. SULIEMAN,

RESPONDENT-RESPONDENT-CROSS-APPELLANT.

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Milwaukee County: CAROLINA STARK, Judge. *Affirmed.*

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Shalaan K. Fisher, *pro se*, appeals the order granting a judgment of divorce between her and Abdullattief A. Sulieman.  She argues that the circuit court erroneously exercised its discretion in how it ordered debt payments.  Sulieman, *pro se*, cross-appeals the judgment of divorce, arguing that the default judgment should be vacated, and either dismissed for jurisdictional defects or reopened for a new trial.  Upon review, we affirm the judgment of divorce.

## BACKGROUND

¶2     This case arises out of the slow and tortuous dissolution of the marriage between Fisher and Sulieman and the appeal and cross-appeal of the Findings of Facts, Conclusions of Law, and Judgment of Divorce (Judgment of Divorce) that the circuit court issued in June 2020.[1]  Based on the circuit court's findings:  the parties were married on February 16, 2001; they separated when Sulieman left Fisher in 2008; Sulieman moved to and resides in Milwaukee; and Fisher remains in Detroit, Michigan, where the parties had resided together.[2]

¶3     The parties made multiple attempts to divorce; we begin in Michigan.  According to an unpublished decision by the Michigan Court of Appeals on April 11, 2013, Fisher filed a "complaint for separate maintenance" in Wayne County, Michigan, on November 13, 2008.  *See Fisher v. Sulieman*,

---

[1]  The Honorable Carolina Stark ordered the Judgment of Divorce at issue here.  Multiple Milwaukee County Circuit Court judges have been involved in this case.  For ease of reading, we refer to all of the judges as the circuit court.

[2] We recite from the circuit court's findings of fact in the Judgment of Divorce. Sulieman, in particular, disagrees with the characterization of many of those facts.  However, there is nothing in the record to suggest that the circuit court's fact finding was clearly erroneous.

No. 299212, unpublished slip op. (Mich. App Apr. 11, 2013) (per curiam). Sulieman then counterclaimed for divorce on January 29, 2009, also in Wayne County. After a trial in November 2009 and January 2010, the parties submitted complaints about the court's oral ruling and did not submit written judgments of divorce for the court; the court ordered an administrative dismissal in April 2010. While Sulieman moved to reinstate the case on May 12, 2010, Fisher submitted a divorce petition she had filed in Milwaukee County on May 20, 2010. The circuit court reinstated the case in June 2010 and granted a judgment of divorce; Fisher appealed in July 2010.

¶4     The Michigan Court of Appeals vacated the June 2010 judgment of divorce. That court concluded that the circuit court had abused its discretion to reinstate the case and that Fisher had been "free to file for divorce in Wisconsin" because there was no suit pending between the parties. The Michigan Court of Appeals concluded that Sulieman had claimed to live and work in Wisconsin and that Michigan was inconvenient for litigation for him; therefore, there was no "good cause" to retain jurisdiction in Michigan. It stated that Fisher could pursue a divorce in Wisconsin because those courts were better equipped to determine the value of Sulieman's recently-discovered medical practice in Wisconsin.[3]

¶5     Immediately after the Michigan Court of Appeals decision was issued, Fisher filed an action for divorce in Milwaukee County on April 16, 2013.

---

[3] We note that the parties' first divorce action filed in Wisconsin was dismissed by the circuit court in 2010 and affirmed by this court. *See Fisher v. Sulieman*, No. 2010AP1990, unpublished slip op. and order (WI App Apr. 18, 2012).

The record reflects that Fisher's testimony to the circuit court included that Sulieman filed three divorce actions in Michigan that were all dismissed.

The circuit court dismissed this action in October 2013, based upon Sulieman's motion that the action belonged in Michigan under the "Doctrine of Forum Non-Convenience." Fisher appealed and this court reversed the dismissal in May 2015, concluding that the circuit court erroneously exercised its discretion because it did not consider the proper standard of law: "the key inquiry is whether there has been a convincing showing that trial in Wisconsin is likely to result in a substantial injustice to Sulieman." *See Fisher v. Sulieman*, No. 2014AP364, unpublished slip op. ¶9 (WI App May 27, 2015). This court remanded for further proceedings. The Wisconsin Supreme Court denied Sulieman's petition for review in September 2015.

¶6 The parties returned to Milwaukee County Circuit Court, which resulted in voluminous filings, most of them irrelevant to our inquiry here. This court addressed multiple appeals: Another divorce action, arguably the third filed in Wisconsin, was dismissed by the circuit court and affirmed by this court. *See Fisher v. Sulieman*, No. 2014AP1029, unpublished slip op. (WI App Feb. 17, 2016). Additionally, the circuit court dismissed a civil action Fisher filed against Sulieman and a company wholly owned by him; this court affirmed. *See Fisher v. Compassionate Doctors, Inc.*, No. 2014AP953, unpublished slip op. (WI App Sept. 20, 2016). The circuit court denied Sulieman's motion for summary judgment based on *forum non conveniens*; Sulieman attempted to appeal but this court dismissed his appeals for lack of jurisdiction or filing fees. *See Fisher v. Sulieman*, No. 2018AP1295, unpublished orders (WI App Aug. 13, 2018, and Sept. 17, 2018); *Fisher v. Sulieman*, No. 2018AP1858-LV, unpublished orders (WI App Nov. 19, 2018, and Feb. 6, 2019); *Fisher v. Sulieman*, No. 2019AP357, unpublished order (WI App Mar. 22, 2019).

¶7    After that series of dismissed appeals, the circuit court issued an order for Fisher and Sulieman to appear at the scheduling and temporary order hearing on March 12, 2019. They did not appear. During the July 9, 2019 hearing when the parties appeared, the court reviewed what information it would need from the parties to resolve the divorce action and set a temporary spousal maintenance amount from Sulieman to Fisher. The court issued a detailed order, signed on September 20, 2019, requiring each party to provide certain information. Both parties filed motions for reconsideration of the court's oral ruling; these motions were denied at a pretrial hearing in November 2019. The court scheduled a two day trial on January 13 and 14, 2020.

¶8    At the December 9, 2019 pretrial hearing, both parties were ordered to appear in person. When Sulieman attempted to appear by phone, the court refused, and ordered him to appear in person. The court then found Sulieman in default relative the hearing and proceeded without him. The court granted Fisher's request to proceed with a default divorce and to review her most recent marital settlement agreement (MSA). While not granting the divorce in full, the court did approve certain portions of Fisher's MSA.[4]

¶9    The circuit court signed an order to show cause and affidavit of contempt that ordered Sulieman to appear in person in court on January 13, 2020. Sulieman did not appear on January 13, 2020. The court found him in contempt for his failure to pay the ordered temporary maintenance, and issued a purge

---

[4] The court approved the parts of the MSA that permanently waived Sulieman's right to maintenance; held that the household possessions in each home are awarded to the respective spouse; held that any automobiles titled in one parties name would be awarded to that party; held that Fisher had no current business interests; and held that Fisher's house in Detroit be awarded to her alone.

condition of a payment of $4,252.50, and the submission of missing financial disclosures and tax returns, with 180 days in the House of Correction as a consequence of non-compliance. The court then proceeded to take Fisher's testimony on the divorce action and received the exhibits she submitted.[5]

¶10 The court issued its written decision on June 20, 2020. The court included the findings it had made in December 2019 with regard to personal property, automobiles, and Fisher's lack of business interest. The court did not make findings with regard to Sulieman's business interest and stated that if Sulieman complied with court orders to provide information, there may be cause to reopen the divorce judgment.

¶11 With consideration of the provisions of WIS. STAT. § 767.61 (2021-22)[6] regarding the division of marital property, the court concluded that Sulieman's "conduct during the marriage and during the divorce proceedings [was] a relevant factor regarding property division." The court found that Sulieman: intentionally hid large financial awards he received as settlement of legal actions during the marriage; failed to comply with the court's temporary order for maintenance; intentionally disregarded the court's orders to provide full financial disclosure and cooperate with the business valuation. The court concluded that Sulieman's "conduct caused significant delay in the final resolution of this divorce action resulting in unnecessary and unreasonable additional financial and emotional strain on [Fisher]." The circuit court created a list of

---

[5] In February 2020, Sulieman moved to reopen the judgment and to schedule a trial, a motion denied by the circuit court in June 2020.

[6] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

6

marital debt owed by both partners, but "conclude[d] that the best way to handle payment of the marital debts to which the parties shall equally contribute is to order each party responsible for the payment of specific debts as listed in the Attachment to Divorce Judgment Addendum[.]" The record reflects that the Addendum assigned certain personal family loans, home equity lines of credit on Fisher's Detroit house, property taxes, and a car loan to Fisher. It assigned certain personal family loans and approximately $57,000 in credit card balances to Sulieman.

¶12 Based on the financial information before the court and the statutory factors, the court ordered Sulieman to make a $198,774 equalization payment to Fisher, paid directly to the Wisconsin Support Collection Trust Fund (WI SCTF); this sum included $24,562 for Fisher's legal costs and fees, $80,708 to equalize the marital debt payments, and $93,504, which equaled 65% of the legal settlement awards granted to Sulieman during the marriage. Additionally, taking into consideration the factors in WIS. STAT. § 767.56, the court ordered maintenance from Sulieman to Fisher for seven years and seven months, totaling $322,322.

¶13 Fisher filed a notice of appeal on September 4, 2020; Sulieman filed a notice of cross-appeal on September 8, 2020.[7]

---

[7] On October 16, 2020, Fisher filed a motion to reopen the judgment, based on Sulieman's production of certain financial records, although she still sought complete information on two business interests: Compassionate Doctors, Inc. and Ageless Wellness Center, Inc., which she alleged were marital assets not included in the equitable distribution. The court held the evidentiary hearing on March 11, 2021; the resolution of those issues was pending at the time of briefing and is not before this court in this appeal.

**DISCUSSION**

¶14    On appeal, Fisher argues that we should affirm the Judgment of Divorce, but remand to the circuit court with instructions to amend that judgment to pay Fisher directly instead of her creditors.[8]   In his cross-appeal, Sulieman presents an almost incomprehensible set of statements about this case made without reference to the record or legal authority.  At most, we may interpret him to argue the court erroneously exercised its discretion when it granted the default divorce and for the division of property in the Judgment of Divorce.  He again asserts that the venue is incorrect and that jurisdiction belongs in Michigan.  However, we are reminded of the Wisconsin Supreme Court's guidance:  "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."  *State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).  We reject both parties' arguments and we affirm the judgment.

¶15    We begin with Sulieman's cross-appeal because, upon review, we decline to address his arguments.  Sulieman's briefing failed to comply with the rules of appellate procedure.  He failed to provide a comprehensible "statement of the case," meaning his briefing did not provide a coherent procedural history or "a statement of facts relevant to the issues presented for review, with appropriate references to the record."  *See* WIS. STAT. RULE 809.19(1)(d).  His arguments are unsupported by legal authority, in violation of RULE 809.19(1)(e).  His briefing did not provide a short conclusion or state his precisely requested relief, in

---

[8] The record reflects that the approximately $57,000 in credit card bills assigned to Sulieman in the Judgment of Divorce appears to match the credit card balances Fisher submitted as part of the accounting of their marital debt.

violation of RULE 809.19(1)(f). A failure to comply with appellate rules can be grounds for sanctions as considered appropriate by this court including "dismissal of the appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel[.]" WIS. STAT. RULE 809.83(2).

¶16    Sulieman asked this court to understand that he was a lay person, proceeding without an attorney. While this court generally liberally construes pleadings, particularly of *pro se* litigants, that supposition is not a license to ignore all rules and manner of legal briefing on appeal. *See **J.L. Phillips & Assocs., Inc. v. E & H Plastic Corp.**,* 217 Wis. 2d 348, 365, 577 N.W.2d 13 (1998). The record here is voluminous, and our review shows that Sulieman failed to participate and provide documentation for his claims. It was within the circuit court's right to render default judgment when Sulieman failed to appear at the ordered trial date. "A default judgment may be rendered against any party who has appeared in the action but who fails to appear at trial. If proof of any fact is necessary for the court to render judgment, the court shall receive the proof." WIS. STAT. § 806.02(5). Here, the circuit court received proof prior to issuing a judgment. That fact that Sulieman's desired information was not included was his own fault.

¶17    Ultimately, Sulieman's "brief is so lacking in organization and substance that for us to decide his issues, we would first have to develop them. We cannot serve as both advocate and judge." ***State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992). Therefore, we decline to address Sulieman's arguments any further.

¶18    We now turn to Fisher's arguments on appeal. "A circuit court's maintenance awards and property division determinations in divorce proceedings

9

are within the sound discretion of the circuit court, and we will uphold such determinations unless the circuit court erroneously exercised its discretion." *Steinmann v. Steinmann*, 2008 WI 43, ¶20, 309 Wis. 2d 29, 749 N.W.2d 145. "An erroneous exercise of discretion may arise from an error in law or from the failure of the [circuit] court to base its decision on the facts in the record." *Meyer v. Meyer*, 2000 WI 132, ¶15, 239 Wis. 2d 731, 620 N.W.2d 382.

¶19 The frustration and delays in this cases were palpable in the briefing. Fisher's appeal here is fairly limited. She asks this court to remand the Judgment of Divorce and instruct the circuit court to amend that judgment to require Sulieman pay her directly, instead of her creditors, the credit card companies. While we recognize Fisher's concern that Sulieman will not pay his assigned debts to the credit card companies, reassigning that payment stream would not guarantee relief for Fisher. Instead, we conclude that the circuit court, based on the facts before it, crafted a solution to the payment of marital debt that was within its discretion. We will not disturb that decision.

¶20 Our review demonstrates that the circuit court accomplished an incredible task to develop a record upon which to base the Judgment of Divorce. The court referenced the proper standards of law under Chapter 767, particularly in applying the factors for maintenance under WIS. STAT. § 767.56 and the property division under WIS. STAT. § 767.61. The court applied that standard of law to the facts in the record, which were based on the evidence submitted by the parties and Fisher's testimony after Sulieman failed to attend the hearing dates as reasonably required by the court. We discern no clearly erroneous findings. We see a demonstrated process of rational decision making. We, therefore, uphold the circuit court's Judgment of Divorce as entered. *See Steinmann*, 309 Wis. 2d 29, ¶90.

**CONCLUSION**

¶21     For the reasons stated above, we affirm the Judgment of Divorce. No costs to either party.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.