MOHNS, INC.,
Plaintiff-Appellant,

v.

TCF NATIONAL BANK,
Defendant-Respondent.†

Court of Appeals

*No. 2005AP705. Submitted on briefs March 7, 2006.
—Decided March 28, 2006.*

2006 WI App 65

(Also reported in 714 N.W.2d 245.)

† Petition to review dismissed 6-13-06.

243

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Attorney James C. Ratzel* of *Ratzel & Associates L.L.C.*, of Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Attorney Michael J. Lund* of *Cooke & Franke, S.C.,* of Milwaukee.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J.   Mohns, Inc., appeals an order granting TCF National Bank's motion to vacate a default judgment, summary judgment granted to TCF after the vacatur, and an order denying Mohns's motion to recon-

sider.[1] Mohns claims that the circuit court erroneously exercised its discretion when it vacated the default judgment. We agree, and reverse and remand with directions to reinstate the default judgment, and to hold a hearing under WIS. STAT. RULE 806.02(5), if TCF contests damages. *See Carmain v. Affiliated Capital Corp.*, 2002 WI App 271, ¶ 30, 258 Wis. 2d 378, 393, 654 N.W.2d 265, 272 (defaulting party may appear at the prove-up hearing and "cross-examine the plaintiff's witnesses and present evidence to mitigate or be heard as to the diminution of damages"); *Smith v. Golde*, 224 Wis. 2d 518, 530, 592 N.W.2d 287, 293 (Ct. App. 1999) (upon entry of a default judgment, the circuit court may hold a hearing to determine damages).

## I.

¶ 2.   Mohns had a business checking account with TCF. In May of 2001, checks were stolen from Mohns. TCF cashed the checks and gave the money to an unknown party. In July of 2001, Mohns, both orally and in writing, told TCF about the stolen checks, and sought reimbursement. When TCF refused, Mohns hired a lawyer.

¶ 3.   Between September of 2001 and October of 2002, Mohns's lawyers sent three letters to TCF's loss prevention department in Burr Ridge, Illinois, attempting to "resolv[e Mohns's] claim." In the final letter, Mohns's lawyer told TCF that if it did not respond to the letter within ten days, Mohns would sue. TCF did not respond to any of the letters.

---

[1] The Honorable Thomas Cooper issued the order granting TCF National Bank's motion to vacate the default judgment. The Honorable M. Joseph Donald issued the order granting summary judgment to TCF and the order denying Mohns, Inc.'s motion for reconsideration.

¶ 4. Mohns sued on January 2, 2003, alleging that TCF's negligence "resulted in the unauthorized withdrawal of funds from the account of Mohns Inc. to unknown third-parties." On January 21, 2003, Mohns served an authenticated summons and complaint on a manager at a branch office in Milwaukee, Wisconsin. TCF does not contend that the service was defective.

¶ 5. TCF did not answer. Mohns moved for, and was granted, default judgment. The circuit court's May 2, 2003, order granting the default judgment awarded Mohns $21,738 in damages "[p]ursuant to [an] affidavit" from Mohns's lawyer, which listed damages of: $15,756.27 for the cashed checks, $3,569.02 in interest, $2,363.32 in attorney fees, and $50 in overdraft fees. The order also permitted Mohns to "seek[] additional damages as may be accrued herein." Judgment was entered on June 5, 2003.

¶ 6. On June 26, 2003, Mohns's lawyer sent a letter to TCF's loss prevention department in Burr Ridge, Illinois, telling it that a default judgment had been entered and that punitive damages and additional damages were still open, but that Mohns would settle the case for $21,738. TCF did not respond. On July 17, 2003, Mohns's lawyer sent a letter to TCF's national headquarters in Wayzata, Minnesota again telling TCF that a default judgment had been entered, outlining TCF's debt to Mohns, and indicating that Mohns would seek punitive damages.

¶ 7. On August 6, 2003, some three weeks after Mohns's lawyer sent the demand-letter to TCF's national headquarters, TCF moved to vacate the default judgment, alleging that its failure to file an answer was the result of "excusable neglect." *See* WIS. STAT. RULE 801.15(2)(a) ("When an act is required to be done at or within a specified time" the circuit court may not "enlarge" the period after the time has expired unless the

moving party proves "excusable neglect."); *see also* Wɪs. Sᴛᴀᴛ. Rᴜʟᴇ 806.07(1)(a).[2] TCF claimed that it did not answer Mohns's complaint because it had moved its legal-processing department from Franklin Park, Illinois, to Willowbrook, Illinois, on January 20, 2003, the day before service of the summons and complaint on the branch manager in Milwaukee. TCF asserted that the branch manager mistakenly mailed the summons and complaint to the old address, and, because it contended that it did not have a record of ever having received Mohns's summons and complaint, "the legal documents were ... presum[ably] ... lost in transit when they were mistakenly sent to the former address."

¶ 8. The circuit court granted TCF's motion to vacate the default judgment, finding "excusable neglect":

> It's troubling, outrageous, and it is amazing how big organizations can say, "Oh, it just got lost between our departments," but they don't give the same courtesy when it works the other way.
>
> But that is neither here nor there and it is nothing against the individual. It's excusable neglect. There is [*sic*] meritorious defenses. The basis for my finding on excusable neglect is that it was very prompt — promptly brought before the court when counsel got involved.

The circuit court also awarded Mohns attorney fees and costs "through and including the date for the motion by TCF to reopen the judgment."

---

[2] Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. Rᴜʟᴇ 806.07(1)(a) provides:

**(1)** On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

(a) Mistake, inadvertence, surprise, or excusable neglect.

248

## II.

■■

¶ 9.   A circuit court has wide discretion in determining whether to vacate a judgment based on excusable neglect. *Dugenske v. Dugenske*, 80 Wis. 2d 64, 68, 257 N.W.2d 865, 867 (1977). Excusable neglect is " 'that neglect which might have been the act of a reasonably prudent person under the same circumstances.' " *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727, 731 (1982) (quoted source omitted). It is not synonymous with carelessness or inattentiveness, and it is not sufficient that the failure to answer in a timely manner be unintentional and in that sense a mistake or inadvertent, " 'since nearly any pattern of conduct resulting in default could alternatively be cast as due to mistake or inadvertence or neglect.' " *Martin v. Griffin*, 117 Wis. 2d 438, 443, 344 N.W.2d 206, 209 (Ct. App. 1984) (quoted source omitted).

■■

¶ 10.   In determining whether the party seeking relief from a default judgment has proven excusable neglect, the circuit court should consider whether the moving party has acted promptly to remedy the default judgment, whether the default judgment imposes excessive damages, and whether vacatur of the judgment is necessary to prevent a miscarriage of justice. *Dugenske*, 80 Wis. 2d at 68-69, 257 N.W.2d at 867; *see also Hansher v. Kaishian*, 79 Wis. 2d 374, 389, 255 N.W.2d 564, 572 (1977) (burden of showing excusable neglect is on the party seeking relief from the judgment). The circuit court must also consider that the law favors the finality of judgments, and the reluctance to excuse neglect when too easy a standard for the vacatur of default

249

judgments would reduce deterrence to litigation-delay. *See Dugenske*, 80 Wis. 2d at 70, 257 N.W.2d at 868.

¶ 11.　Mohns claims that the circuit court erroneously exercised its discretion because it did not apply the "reasonably prudent person." standard to the facts of this case. We agree. As we have seen, the circuit court relied solely on the fact that TCF acted promptly once its lawyers "got involved":　"The basis for my finding on excusable neglect is that it was very prompt — promptly brought before the court when counsel got involved." But what the lawyers did after TCF's default is, in the context of this case, largely immaterial. *See Hansher*, 79 Wis. 2d at 392, 255 N.W.2d at 574. The circuit court must consider later "prompt action combined with the reasons advanced by the dilatory party for the omission." *Hedtcke*, 109 Wis. 2d at 476, 326 N.W.2d at 734. The circuit court did not do so here.

¶ 12.　As we have seen, TCF claimed that it did not answer Mohns's complaint because it and the summons were "lost in transit" when it changed offices. As the circuit court recognized, TCF is a substantial, sophisticated bank with, as TCF writes in its brief on appeal, "well-established procedures to ensure the orderly and timely handling of legal process." It has not demonstrated either why those procedures, if as efficacious as it implies, did not alert TCF that a suit was potentially imminent (as it was told by Mohns's many letters, which TCF does not deny receiving), or why those "well-established procedures" could not accommodate what the Record reflects was a routine move of an office, albeit alleged by TCF to be "a complicated procedure involving the transfer of many documents and equipment," not caused by some catastrophe. *See Hollingsworth v. American Fin. Corp.*, 86 Wis. 2d 172,

185–186, 271 N.W.2d 872, 878 (1978) (confusion in forwarding papers from one office to another due to a business reorganization not excusable neglect); *Dugenske*, 80 Wis. 2d at 68-71, 257 N.W.2d at 867-869 (lawyer's misplacement of client's files while relocating law offices not excusable neglect). TCF has not demonstrated that its substantial delay in responding to Mohns's suit was the result of "excusable neglect." Accordingly, we reverse and remand with directions to reinstate the default judgment, and, if necessary, to hold a hearing under Wis. Stat. Rule 806.02(5).

*By the Court.*—Judgment and orders reversed and cause remanded with directions.